# 23-1019

United States Court of Appeals
for the Second Circuit

GUO HUA JIN,

*Plaintiff-Appellee,*

against

CITY OF NEW YORK, POLICE OFFICER ARIELLE GIGANTE, POLICE OFFICER JOHN DOE, POLICE OFFICER JANE DOE, POLICE OFFICER JULIO VASQUEZ, ELVIN MERA, POLICE OFFICER LISA ZEPPETELLI, POLICE OFFICER MICHAEL BONGIORNO, SERGEANT YAUDY FERNANDEZ,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of New York

**REPLY BRIEF**

RICHARD DEARING
MELANIE T. WEST
AMANDA ABATA
 *of Counsel*

February 20, 2024

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for the Appellants
100 Church Street
New York, New York 10007
212-356-0851 or -0842
aabata@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ......................................................................................... 3

    JIN CANNOT OVERCOME THE OFFICERS' SHOWING
    THAT THEY ARE ENTITLED TO QUALIFIED IMMUNITY ....... 3

    A.  Jin's unsupported and irrelevant attacks on the 911 call
        report and victim's statements do not undermine the
        existence of arguable probable cause. ........................................ 4

    B.  Jin's alternate version of events is not supported by the
        factual evidence. ........................................................................ 7

CONCLUSION ................................................................................... 12

CERTIFICATE OF COMPLIANCE ...................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. City of New York*,
    798 F.3d 94 (2d Cir. 2015) ............................................................................... 4

*Curley v. Village of Suffern*,
    263 F.3d 65 (2d Cir. 2001) ...................................................................... 6, 7, 9

*Green v. Dep't of Educ.*,
    16 F.4th 1070 (2d Cir. 2021) ........................................................................ 10

*Krause v. Bennett*,
    887 F.2d 362 (2d Cir. 1989) ............................................................................ 6

*Panetta v. Crowley*,
    460 F.3d 388 (2d Cir. 2006) ............................................................................ 7

*Ricciuti v. New York City Transit Auth.*,
    124 F.3d 123 (2d Cir. 1997) ........................................................................ 7, 9

# PRELIMINARY STATEMENT

In our opening brief, the City established that plaintiff Guo Ha Jin's arrest was supported by probable cause. To recap, NYPD officers responded to a 911 call reporting that Jin, whom the caller identified as his brother's ex-wife, had attacked the caller's father with an umbrella, resulting in "scratches." At the scene, the victim's son's statement, the victim's demonstration of the attack, and his visible injuries corroborated the report. These facts provided probable cause for Jin's arrest—or, at a minimum, arguable probable cause, thus entitling the officers to qualified immunity.

In response, Jin raises a hodgepodge of arguments along two tracks, both unpersuasive. The first is that the officers should have known or investigated various theories that, according to Jin, defeat probable cause. But these theories are either speculative, refuted by the record, or irrelevant. Jin's claim that the victim's son did not witness the attack does not follow from the fact that the 911 call apparently came from a number associated with a massage parlor, and does not undermine probable cause in any event, where the victim had visible injuries and demonstrated what happened to the police. Her assertion that the

victim's injuries were "from some other cause," even if true, does not explain why the officers were not entitled to credit the victim's statement otherwise, as settled law provides. And Jin's claim that the victim did not demonstrate the attack for the officers but "merely pose[d] with the umbrella" is contradicted by the video evidence.

The second track is Jin's meritless claim that her former in-laws and the arresting officers conspired to falsify charges against her. Although Jin raised an unsuccessful conspiracy claim against the City below, the specific facts alleged in her brief—that the police engaged in "evidence manipulation" by "pos[ing] [the victim] to photograph the scratch on his arm," and that Officer Gigante and the DA's Office "concocted" facts in the supporting deposition—are not only baseless, but unpreserved.

Jin's bare denials and speculative theories cannot defeat summary judgment. The officers were not required to investigate her various, largely post hoc hypotheses about the victim's injuries and motivations. Because the victim's physical demonstration of the assault, his son's accompanying explanation, and the victim's visible injuries provided at least arguable probable cause for Jin's arrest, this Court should reverse.

2

# ARGUMENT

## JIN CANNOT OVERCOME THE OFFICERS' SHOWING THAT THEY ARE ENTITLED TO QUALIFIED IMMUNITY

As the City established in its opening brief, the officers had at least arguable probable cause to arrest Jin, based on the 911 call and dispatch report, the victim's injuries, his demonstration of the attack and his son's supporting account. Jin's attacks largely ignore the relevant question on appeal: whether, based on the facts available to the officers at the time, there was arguable probable cause for her arrest. That question can be analyzed in several ways: whether a reasonable police officer would have believed probable cause existed to arrest Jin; whether reasonable police officers could disagree on whether there was probable cause; or whether any clearly established law, of which any reasonable police officer would have been aware, provided that probable cause did not exist under these circumstances (*see* Brief for the City ("City Br.") 8-10). Under any of these analytical frameworks, there was arguable probable cause for Jin's arrest. But Jin sidesteps these questions and focuses on attempting to poke holes in the victim's account, largely without even explaining why the officers should have been aware of the supposed issues she identifies.

## A. Jin's unsupported and irrelevant attacks on the 911 call report and victim's statements do not undermine the existence of arguable probable cause.

As we explained in our opening brief, the officers responding to the 911 call were met with a scene that corresponded to the dispatch report (City Br. 12-13; Joint Appendix ("A") 163-65). The dispatch report identified the 911 caller as the victim's son and recounted that the victim was attacked with an umbrella, sustaining injuries; identified Jin as the assailant by name and relationship; and gave a physical description of her age, appearance, and clothing (A163-165). When the officers arrived, they were met at the door by the victim's son, observed the victim's injuries and demonstration of the attack, and saw Jin, who matched the description given on the call. And Jin's own account verified a portion of the information the victim's son provided—that she deviated from the normal pickup arrangement for her son by going upstairs to the apartment door instead of waiting in the apartment lobby (A200, 468). Together, this information provided, at a minimum, arguable probable cause for Jin's arrest. *See Brown v. City of New York,* 798 F.3d 94, 99 (2d Cir. 2015) (officers entitled to rely on the information conveyed by the

911 caller and observations matching that information at the scene, which together provided arguable probable cause for plaintiff's arrest).

Jin argues that the 911 call was "suspicious" because the telephone number from which it was made appears on a webpage associated with a massage parlor (Brief for Appellee ("Jin Br.") 3, 4, 15). According to Jin, this should have signaled to the officers that the call was not made from the apartment, and therefore that the 911 caller did not witness the altercation (Jin Br. 15). This argument fails at every step. First, there is no allegation in the complaint (nor any reason to believe) that the police officers had information that the number was associated with a massage parlor—and as a fact not known to the officers, it is irrelevant to the question of probable cause.[1] Second, even if the number was associated with a massage parlor, it does not mean the call came from a landline at another location, rather than from a mobile number. Third, as noted in the City's opening brief, while it was reasonable for officers to believe that the man who opened the door to them and identified himself as Jin's son was the 911 caller, probable cause does not turn on the victim's son

---

[1] The "historical background" information in Jin's brief relating to the parties' prior relationship and visitation arrangements (Jin Br. 7-9) is irrelevant for the same reason.

5

having been an eyewitness, where the victim was present and demonstrated the attack to officers (City Br. 12, 13). Indeed, as Officer Gigante clarified, the officers considered the victim's son's statements not as an eyewitness but primarily as an interpreter for the victim (A178).

Jin now argues that the 911 system populates the number from where the call is made, and accordingly, that the police had sufficient information to suspect the victim's son was off-site when he called 911 (Jin Br. 7). To begin, Jin did not make this factual allegation in her complaint, or raise this argument below, so it is unpreserved. But in any event, it is irrelevant for the reasons discussed above—the so-called "information" that the number was associated with a massage parlor neither established that the call was made off-site, or, even if it did, undermined probable cause. Moreover, any suggestion that the availability of this vague "information" required fulsome investigation flies in the face of the well-established law that officers are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. *See e.g., Curley v. Village of Suffern,* 263 F.3d 65, 70 (2d Cir. 2001); *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989).

Moving beyond the 911 call, Jin argues that the victim's son's account was "hearsay" and therefore unreliable (Jin Br. 15, 22). But as discussed above and in our opening brief (City Br. 13, 14), Jin cannot support her assertion that the officers should have disregarded the son's statements. In any event, while it was reasonable for the officers to assume the victim's son did witness the attack, the probable cause for Jin's arrest does not turn on whether he was an eyewitness, because the father demonstrated the attack and pointed to his injuries. The officers were entitled to rely on the father's communications, *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006), and on his visible injuries, *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997). *See also, Curley,* 263 F.3d at 70. And even beyond that, Jin has never even alleged that she, or anyone else, ever told officers that the victim's son was not present for the altercation.

### B. Jin's alternate version of events is not supported by the factual evidence.

To argue that the officers should have discounted the victim's account, Jin points to two things: her own alleged injuries, and her statements to officers that neighbors could corroborate her version of the

events (Jin Br. 18, 21). But the City already addressed these points in its opening brief, and neither dissipates probable cause (City. Br. at 17-20). To start, Jin's claim that officers deliberately ignored her injuries is undermined by her own account. In contrast to the victim's laceration and bruises, Jin admits that the officers could not see her purported injuries as she was led away (Jin Br. 21). The dress she was wearing, described in the dispatch report, covered her arms, and her tall boots covered most of her legs (Jin Br. 21, A165, A453). The injuries she claimed she received on her arms and legs from her in-laws hitting and kicking her were therefore not visible (A455, 469, 480). While the video footage reflects that Jin did try to show officers injuries she said she had on her head, she admits that these were not readily apparent, and the officers would have had to examine her to discover the injuries (A453, A473).

Next, Jin argues that the officers should have investigated her claims that neighbors could corroborate her version of the events (Jin Br. 9, A470). But as we argued in our opening brief, the officers were not required to do so (City Br. 17-19). As Officer Gigante testified in her deposition, despite Jin's claims, "nobody came out of the [other]

apartment[s], nobody made [another] 911 phone call" (A412). To speak to the neighbors, the officers would have had to knock on doors and conduct interviews, all to obtain evidence that would, at most, conflict with the victim's account. They were not obligated to do so. *Ricciuti,* 124 F.3d at 128 (rejecting argument that arresting officer 'should have made further inquiries and interviewed witnesses at the scene'); *Curley,* 268 F.3d at 70 (2d Cir. 2001) (holding that when a purported assault victim who was visibly injured told the police that Curley had assaulted him, the officer had probable cause to arrest, despite Curley's conflicting account).[2] Additionally, because Jin did not introduce any competent evidence from the neighbors, no reasonable jury could even reach any conclusion about what they would have told police if they had been questioned, let alone that it would have negated probable cause.

Perhaps recognizing that the totality of the circumstances established probable cause for her arrest and that her piecemeal attacks on the information available to the officers are unavailing, Jin resorts to

---

[2] Jin's argument that the neighbors may not have called 911 because they believed she would do so (Jin Br. 9) is not supported by her own statements that she asked them to call 911 (A470). In any event, the officers could not have known about any such confusion.

claiming that the officers spontaneously conspired with the victim and his son to falsify assault claims against her (Jin Br. 15, 17, 21). Jin makes three allegations in support of this theory: that the officers went back to the victim's apartment after the arrest to take pictures of the victim's injuries; that the son said his father had a "little bruise" from the attack, not a scratch; and that the father gestured towards a small bruise in the crook of his arm when initially questioned by the officers about his injuries (Jin Br. 15). Based on this, Jin theorizes that the "scratch was added later by police in supplementary photos taken by Officer Vasquez" (Jin Br. 21).

As an initial matter, these allegations appear nowhere in the complaint (A15). Nor did Jin even make them in opposition to the City's summary judgment motion. Jin cannot raise them for the first time on appeal.[3] *Green v. Dep't of Educ.,* 16 F.4th 1070, 1078 (2d Cir. 2021) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

---

[3] While Jin did assert a superficial conspiracy claim in her complaint, the district court appropriately dismissed it as conclusory because she "failed to make any showing that the Officers made an agreement to act in concert to injure her." (A42-43, SPA12).

Preservation aside, these "facts" do not support Jin's case. First, Jin never explains why photographing the victim's injuries after the arrest, rather than before, is suspect, or why it undermines the existence of probable cause. Second, Jin's claim that the victim only had a bruise when the officers arrived, and that officers "added" the scratch after the fact, is contradicted by Officer Vasquez's body camera footage, on which the victim's laceration is readily apparent (A202).

The district court erred in finding that irrelevant details—like the provenance of the 911 call and whether the victim's son witnessed the account—dissipated probable cause for Jin's arrest. That reasoning was flawed for the reasons explained in the City's opening brief and above, and Jin's half-hearted attempts to defend it cannot overcome the clear existence of probable cause based on the totality of the circumstances here. Jin does not even attempt to defend the court's further reasoning that the context of a domestic dispute casts doubt on a complainant's veracity. And the additional reasons Jin proffers for affirmance are baseless conspiracy theories that were either rightly dismissed by the district court or never before it in the first place.

## CONCLUSION

The Court should reverse the district court's denial of qualified immunity for the false arrest claim.

Dated: New York, NY
        February 20, 2024

                            Respectfully submitted,

                            HON. SYLVIA O. HINDS-RADIX
                            *Corporation Counsel*
                            *of the City of New York*
                            Attorney for Appellants

By: _/s/ Abata_

                            AMANDA ABATA
                            Assistant Corporation Counsel

                            100 Church Street
                            New York, NY 10007
                            212-356-0851
                            aabata@law.nyc.gov

RICHARD DEARING
MELANIE T. WEST
AMANDA ABATA
   *of Counsel*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 2224 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
AMANDA ABATA